[Cite as *State v. Prince*, 2012-Ohio-4111.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                           CASE NO.  2-12-07

      v.

JAMES J. PRINCE,                               O P I N IO N

      DEFENDANT-APPELLANT.

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2011-CR-144

Judgment Affirmed

Date of Decision:   September 10, 2012

APPEARANCES:

    *Terrence K. Scott*   for Appellant

    *Edwin Pierce and R. Andrew Augsburger*   for Appellee

**WILLAMOWSKI, J**.

{**¶1**} Defendant-Appellant, James Prince ("Prince"), appeals the judgment entry of the Auglaize County Court of Common Pleas, sentencing him to prison for four years after he pled guilty to possession of heroin and illegal conveyance of drugs into a correction facility. On appeal, Prince contends that the trial court abused its discretion when it denied his presentence motion to withdraw his guilty plea. For the reasons set forth below, the judgment is affirmed.

{**¶2**} On October 4, 2011, the Ohio State Highway Patrol responded to a report that individuals were using drugs inside a vehicle parked at a rest area along I-75 in Auglaize County. Upon searching the vehicle, the officers located heroin, a syringe, and a cup of water that had been used to clean the syringe. Prince admitted that these items belonged to him. Prince was placed under arrest and taken to the Auglaize County Correctional Center.

{**¶3**} On October 6, 2011, the Auglaize County Grand Jury indicted Prince on one count of possession of heroin in violation of R.C. 2925.11(A)(C)(6)(a), a felony of the fifth degree, and one count of possession of drug abuse instruments in violation of R.C. 2925.12(A), a misdemeanor of the second degree. On the same date, Prince's cell at the correctional center was searched based on information provided by other inmates that Prince had drugs in his cell. During this search, officers located a baggie containing heroin.

{¶4} Counsel was appointed for Prince, and on October 12, 2011, he entered not guilty pleas to the two counts in the indictment. Prince himself filed several hand-written motions with the trial court while he was incarcerated. These motions were denied and Prince was instructed that all motions should be filed by counsel as the court did not allow "hybrid representation," i.e., Prince representing himself in addition to an attorney. (10/19/11 J.E.)

{¶5} The final pre-trial hearing was set for November 23, 2011, with a jury trial scheduled for December 12, 2011. (10/28/11 J.E.) Prince's counsel filed a motion to suppress and a hearing on that motion was set for that on November 28, 2011. On the date set for the pre-trial, the State filed a Bill of Information pursuant to Crim.R. 7, charging Prince with one count of illegal conveyance of drugs into a correction facility in violation of R.C. 2921.36(A)(2), a felony of the third degree, pertaining to the drugs found in his jail cell.

{¶6} On November 23, 2011, instead of a pre-trial hearing, the trial court was informed that Prince had accepted a plea agreement and wished to change his plea. Pursuant to the terms of that agreement, Prince would plead guilty to Count I in the indictment, the fifth degree felony, with a maximum sentence of twelve months in prison, and the State would enter a nolle prosequi as to Count II, the misdemeanor. Prince also would waive prosecution by Indictment and agree to be prosecuted by the Information for the charge of illegal conveyance of drugs,

which, "pursuant to the statute, there's a thirty-six months maximum prison term for that offense * * *." (11/23/11 Change of Plea Hrg. Tr. 4) Prince would also agree to withdraw his motion to suppress. (*Id*.) The agreement was reduced to writing and signed by the prosecutor, Prince, and his attorney. (*Id*.)

{¶7} The trial court conducted a full and detailed Crim.R. 11 plea colloquy before accepting Prince's pleas and finding him guilty. The trial court questioned Prince in detail to determine whether he understood everything that he was agreeing to, whether he could read and write, if he was satisfied that he knew what the charges were about, whether he was under the influence of drugs, alcohol, medication, or in withdrawal, whether he was in any pain that prevented him from thinking clearly, whether he knew what he was doing, and whether he was changing his plea and waiving indictment freely and voluntarily of his own free will. (*Id.* 6-12)

{¶8} The trial court further asked Prince, "Do you want me to read and explain to you any further the Bill of Information, the law, and the penalties?" (*Id.* 8) Prince answered, "No, Your Honor." At this point, Prince's attorney interjected and informed the trial court on the record that he had recommended that Prince wait at least an additional five days, until the date of the suppression hearing, before making his final decision, in order to allow enough time to review

the discovery that the State had just provided, and to further discuss the Bill of Information and the plea agreement with his client. (*Id.* 8-9)

**{¶9}** However, Prince indicated that he was satisfied that he knew what the charges were about and satisfied that he wanted to go forward. (*Id.* 9)

THE COURT: You do understand you've got additional time if you want more time to think about it?

PRINCE: Yes, Your Honor.

THE COURT: You want to go forward today and do this?

PRINCE: Yes, Your Honor.

THE COURT: And you are doing that freely and voluntarily of your own free will?

PRINCE: Yes, Your Honor.

(*Id.*) The trial court also questioned Prince about his willingness to waive indictment and be prosecuted by the Bill of Information, and further explained the potential penalties involved. (*Id.* 11-14)

**{¶10}** Prince then entered pleas of guilty to the two counts specified in the plea agreement. (*Id.* 15) Before the trial court would accept the pleas, it explained in detail all of the rights that Prince was giving up by entering his pleas rather than going to trial. Prince acknowledged that he understood and agreed to waive each and every right read to him by the trial court. The trial court then accepted

Prince's guilty pleas. It ordered a presentence investigation report and continued the matter for sentencing.

{¶11} On December 8, 2011, prior to sentencing, Prince filed a pro se motion seeking to withdraw his guilty plea pursuant to Crim.R. 32.1, claiming that he was not in his right state of mind when he entered his plea, claiming he was psychologically disabled and did not understand the matters in the plea agreement. (12/8/11 Motion, #55). He also claims he was denied effective counsel because neither his attorney, nor the trial court, nor the jail personnel had done anything to obtain medications for him. (*Id.*)[1]

{¶12} On December 16, 2011, the trial court held a hearing on Prince's motion to withdraw his plea and on the other matters he had raised. First, the trial court informed Prince that it had no medical training or authority, but that it had made sure that the jail administration was aware of his medical complaints. Prince had written multiple letters to the trial court and jail personnel claiming that he was bi-polar and suffered from manic depression, and that he was not receiving any medication for these conditions in jail. The trial court reviewed Prince's medical communications (Exhibits A and C) and noted that the nurse had responded that the doctor could not prescribe medication for his claimed bi-polar

---

[1]Prince's attorney also filed a "Motion in Support of Defendant's Ex Parte Request to Withdraw Plea" on December 9, 2011. (12/9/11 Mtn. #56) On December 12, 2011, another copy of Prince's Motion to Withdraw his Plea, dated December 4, 2011, was filed with the notation that it had been found after the fact and had inadvertently not been docketed." (12/12/11 Mtn. #57)

condition when they "have no medical confirmation." The communications from the registered nurse stated that "I have asked for additional information in regards to your mental health condition and, to date, have received no additional documentation." (Ex. A, "kite" dated 10/24/11) In another communication, the nurse noted that "the doctor has reviewed all the medical information and we are not placing you on any medication." (Ex. A, "kite" dated 11/3/11) The information the jail's medical personnel had received from one of the contacts provided by Prince did not indicate that he had been on any long-term medication program. (Ex. A, Memo dated 10/24/11; 12/16/11 Hrg. Tr. 11-12)

{¶13} The trial court then addressed Prince's request to obtain new counsel. After hearing the testimony of the parties, the trial court did not find any merit to Prince's claims that counsel's representation was deficient and denied the motion to disqualify counsel. (12/16/11 Hrg. Tr. 19)

{¶14} And finally, the trial court heard Prince's testimony concerning his reasons for wanting to withdraw his pleas. (*Id.* at 20-39) Prince claimed that he was not in his right mind when he made the pleas, due to lack of medication for his bi-polar, manic depression, and anxiety conditions. He also claimed that he had believed that the maximum penalty for the third degree felony was five years, and that he was gaining a benefit by pleading guilty and getting a three year sentence. (*Id.* at 37-39) He had since learned that the law had recently been

changed, as a result of H.B. 86, and the maximum penalty had been reduced to three years. Therefore, he felt he was not gaining any benefit from the plea deal. (*Id.* at 39; 43)

{¶15} The State opposed allowing the withdrawal of his guilty pleas claiming that Prince's multiple pro se motions and communications with the trial court and jail personnel exhibited that he was of clear mind and fully understood the law and his rights. (*Id.* at 39) The State further pointed out that Prince had been correctly informed of the maximum penalties according to law, both at the change of plea hearing and on the plea agreement forms. The State represented that Prince's desire to change his plea "seems to be more of akin to buyer's remorse than one of true confusion as to what happened at the plea change." (*Id.* at 40)

{¶16} The trial court took the matter under advisement and on January 9, 2012, denied Prince's motion to withdraw his plea. The trial court found that the "Defendant's basis amounts to his having changed his mind. He was fully advised in accordance with the Criminal Rules, the statutes, and his rights, he knowingly and voluntarily waived prosecution by indictment, [and] entered his plea freely and voluntarily * * *. (1/9/12 J.E., #61)

{¶17} The sentencing hearing was held on January 13, 2012. Noting that the PSI indicated that Prince had a lengthy criminal history, the trial court

-8-

sentenced Prince to maximum, consecutive sentences. He was sentenced to twelve months in prison for possession of heroin and thirty-six months in prison for the illegal conveyance of drugs, for a total of forty-eight months in prison. (1/13/12 J.E. Orders on Sentence)

{¶18} It is from this judgment that Perkins now appeals, raising the following assignment of error for our review.

### Assignment of Error

**The trial court abused its discretion when it denied Mr. Prince's December 8, 2011 motion to withdraw his guilty plea.**

{¶19} Prince claims that the trial court abused its discretion by denying his presentence motion to withdraw his guilty plea because a presentence motion to withdraw a guilty plea should be liberally and freely granted. Prince contends that he demonstrated a reasonable and legitimate basis for the withdrawal, asserting that he was not of clear mind when he made the plea because he did not have his medication. He also claims that he did not understand at the time he entered his plea that the maximum sentence for an F-3 was 36 months.

{¶20} Crim.R. 32.1 states that: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Although the rule does not articulate a standard to be used when considering a presentence motion, it has long

been held that a presentence motion to withdraw a guilty plea "should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521 (1992). However, this does not mean that a motion to withdraw a guilty plea will be granted automatically. *State v. Drake*, 73 Ohio App.3d 640, 645 (8th Dist.1991). "A defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for withdrawal of the plea." *State v. Xie*, at paragraph one of the syllabus.

{¶21} It is within the sound discretion of the trial court to determine whether there is a legitimate and reasonable basis for withdrawal of a guilty plea and, absent an abuse of discretion, the trial court's decision on the matter must be affirmed. *Id.* at 527. The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). It involves views or actions "that no conscientious judge, acting intelligently, could honestly have taken." (Internal citations omitted.) *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 129-130.

{¶22} Appellate courts often consider the following factors when reviewing a trial court's decision concerning a presentence motion to withdraw a guilty plea: 1) whether the State will be prejudiced by withdrawal; 2) the representation afforded to the defendant by counsel; 3) the extent of the Crim.R.11 plea hearing; 4) the extent of the hearing on the motion to withdraw; 5) whether the trial court

gave full and fair consideration to the motion; 6) whether the timing of the motion was reasonable; 7) the reasons for the motion; 8) whether the defendant understood the nature of the charges and potential sentences; and 9) whether the accused was perhaps not guilty or had a complete defense to the charge. *State v. Fish*, 104 Ohio App.3d 236, 240 (1st.Dist.1995); *State v. Leffler*, 3d Dist. No. 6-07-22, 2008-Ohio-3057, ¶ 11. A trial court does not abuse its discretion in overruling a motion to withdraw a guilty plea where the accused is represented by highly competent counsel; where the accused was afforded a full hearing pursuant to Crim.R. 11 before he entered the plea; when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion; and where the record reveals the court gave full and fair consideration to the plea withdrawal request. *State v. Staton*, 3d Dist No. 4-11-06, 2011-Ohio-4889, ¶ 4, quoting *State v. Sylvester*, 2d Dist. No. 22289, 2008–Ohio–2901, ¶ 19. A change of heart is not sufficient grounds to allow the withdrawal of the guilty plea, even in a presentence motion to withdraw the plea. *Sylvester* at ¶ 4; *State v. Lambros*, 44 Ohio App.3d 102 (8th Dist. 1988). "A change of heart or mistaken belief about the plea is not a reasonable basis requiring a trial court to permit the defendant to withdraw the plea." *State v. Hoke*, 4th Dist. No. 10CA32, 2011–Ohio–1221, ¶ 13.

{¶23} The record demonstrates that Prince was afforded a full hearing, pursuant to Crim.R. 11, before he entered his guilty plea. The transcript of the

plea hearing reveals that the trial court explained the aspects of the plea to him, and that Prince was cognizant of the consequences of entering the guilty plea. Prince was represented by competent counsel. Although Prince chose not to follow counsel's recommendation that Prince delay entering his plea, the record shows that Prince had chosen to by-pass working with counsel, make his own decisions, and file his own motions through the entire proceedings in this case. At the plea hearing, the trial court addressed Prince personally and reviewed the plea agreement with Prince, addressing the nature of the charge against him, the maximum penalty involved, the effect of a guilty plea, and Prince's constitutional rights. After questioning Prince, the trial court determined that Prince was making the plea voluntarily, with an understanding and waiver of his rights, an understanding of the nature of the charge against him, and an understanding of the consequences of his guilty plea. Based on the record, Prince was afforded a full hearing with a thorough explanation of all aspects in making his plea, pursuant to Crim.R. 11, before he entered his guilty plea. There was nothing in the record to indicate that Prince was not thinking clearly or that he did not comprehend what he was doing.

{¶24} The record further demonstrates that Prince was given a full, impartial hearing on his motion to withdraw his guilty plea. However, after

consideration of all of the evidence and testimony, the trial court concluded that Prince had merely changed his mind.

**{¶25}** In support of his position, Prince cites to a Seventh District Court of Appeals decision in which the appellate court reversed the trial court's denial of the defendant's motion to withdraw his presentence guilty plea, claiming that the facts in that case are similar to the facts in Prince's case. *See State v. Cuthbertson*, 139 Ohio App.3d 895, 2000-Ohio-2638 (7th Dist.) However, we find that the decision in *Cuthbertson* is distinguishable in several important aspects. In addition to the defendant admitting that he "changed his mind," he also claimed that he was coerced into making his plea *and* he claimed that he was innocent. *Id.* at 899. The defendant set forth the possibility of a defense to the charge by maintaining his claims that he was not the perpetrator of the murder. *Id.* The court of appeals held that "when a defendant claims he is innocent and wishes to withdraw his plea of guilt prior to sentencing, a comparison of the interests and potential prejudice to the respective parties weigh heavily in the interests of the accused." *Id.* at 899-900.

**{¶26}** In Prince's case, there was no claim that he was not actually guilty of the charges. Prince essentially acknowledged that he changed his mind about his plea when he claimed he later discovered that he did not receive as good of a deal as he thought he had at the time of the plea. However, the record shows that both

the State and the trial court meticulously explained the correct penalties that were involved and gave Prince every opportunity to request clarification or further information.

**{¶27}** Prince also claims that he was not able to think clearly because of a lack of proper medication for his psychological conditions. However, there was no evidence in the record to support Prince's claims. The medical personnel at the jail had attempted to obtain more information concerning his claims but did not receive any in response to their inquiries. Furthermore, Prince's communications with the court and jail personnel and his behavior in front of the court on several occasions did not appear to indicate that he was suffering from any impairment. The trial court is in the better position to evaluate both the motivation of the defendant in pleading guilty and the credibility and weight to be given to the reasons for seeking to withdraw the plea. *State v. Kutnyak*, 6th Dist. No. WD-11-038, 2012-Ohio-3410, ¶ 5. When applying an abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *State v. Castillo*, 3d Dist. No. 14-10-36, 2011-Ohio-3131, ¶ 17.

**{¶28}** Based on all of the above, we do not find that the trial court abused its discretion when it denied Prince's motion to withdraw his guilty plea. Prince's assignment of error is overruled.

{¶29} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**PRESTON and ROGERS, J.J., concur.**

**/jlr**