[Cite as *State v. Nisley*, 2014-Ohio-1137.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO. 5-13-25

      v.

NATHAN A. NISLEY,               O P I N I O N

      DEFENDANT-APPELLANT.

---

**Appeal from Hancock County Common Pleas Court**
**Trial Court No. 2013-CR-139**

**Judgment Affirmed**

**Date of Decision:  March 24, 2014**

---

APPEARANCES:

    *Scott B. Johnson* **for Appellant**

    *Mark C. Miller and Alex K. Treece* **for Appellee**

**SHAW, J.**

{¶1} Defendant-Appellant Nathan Nisley ("Nisley") appeals the September 6, 2013, judgment of the Hancock County Common Pleas Court sentencing Nisley to serve ten months in prison after Nisley pled guilty to the charges of Possession of Criminal Tools in violation of R.C. 2923.24(A), a felony of the fifth degree, and Attempted Aggravated Possession of Drugs in violation of R.C. 2923.02(A) and R.C. 2925.11(A), a first degree misdemeanor. On appeal, Nisley argues that the trial court erred by denying his presentence motions which he contends collectively constituted a motion to withdraw his guilty plea, that the trial court erred by denying his motion for a psychological evaluation prior to the sentencing hearing and that he was denied effective assistance of counsel. For the reasons that follow, we affirm the trial court's judgment.

{¶2} The facts relevant to this appeal are as follows. On June 24, 2013, Nisley was the driver of a vehicle that was stopped at a red light two cars in front of an officer in his patrol car.[1] The officer observed Nisley "rapidly accelerate through the red light and almost strike a black Toyota that was in the process of turning left in the intersection." The officer then conducted a traffic stop, recognizing Nisley from previous interactions.

---

[1] These facts are taken from the presentence investigation report.

{¶3} According to the officer, Nisley became very nervous and shaky and talked rapidly. The officer explained that he was aware of a recent traffic stop where drugs had been located on Nisley. Ultimately Nisely gave voluntary consent for the officer to search his vehicle.

{¶4} Upon searching the vehicle, the officer located a "Yoo-hoo" beverage can. The officer stated that when he picked up the Yoo-hoo can, it felt heavier than it should have been. Further investigation by the officer showed that the top of the can unscrewed and that there was a prescription bottle inside the can, which contained a white powder wrapped up in a coffee filter. Underneath the bottle was a plastic package containing pink pills. Nisley admitted to the officer that the pills were Percocet and that the unknown powder was "crystal."

{¶5} On June 25, 2013, Nisley was indicted for Possession of a Schedule II Controlled Substance, specifically, Oxycodone Hydrochloride, in violation of R.C. 2925.11(A), a felony of the fifth degree, and Possession of Criminal Tools in violation of R.C. 2923.24(A), a felony of the fifth degree. (Doc. 1).

{¶6} On July 3, 2013, Nisley was arraigned and pled not guilty to the charges against him. (Doc. 7).

{¶7} On July 15, 2013, a change of plea hearing took place in this matter.[2] Pursuant to plea negotiations, the State asked the trial court to amend the first

---

[2] At this hearing, Nisley pleaded guilty in two separate cases: 2012-CR-281 and 2013-CR-139. Only 2013-CR-139 is the subject of this appeal.

count of the indictment, Possession of Controlled Substance, to Attempted Aggravated Possession of Drugs in violation of R.C. 2923.02(A) and R.C. 2925.11(A), a misdemeanor of the first degree. The remaining count of Possession of Criminal Tools was left as indicted.

{¶8} The trial court then had the following exchange with Nisley:

**Q: Did you review both plea agreements?**

**A: I did.**

**Q: Did you discuss them both with [your defense counsel]?**

**A: We did.**

**Q: Do you have any questions about what they say at this point?**

**A: None.**

**Q: All right. Is anybody trying to force you into this decision this morning?**

**A: None. [sic]**

**Q: Has anybody made you any promises as to the outcome of your case?**

**A: None.**

**Q: As a matter of fact, I thought I heard [the State] say, and I wanted to confirm that with you, that there is not a sentencing agreement between the parties. So each would come in and argue what they believe the appropriate sentence should be.**

**A: Yes.**

* * *

**Q: Mr. Nisley, do you currently take any medicine?**

**A: I ain't taking none, no. Triaxodome and heart pills that don't work.**

**Q: Okay, but you're not taking anything at this time?**

**A: No.**

**Q: Do you have anything whatsoever in your system that would make it difficult for you to understand our proceedings today?**

**A: Not drugs wise.**

**Q: All right, what would make it difficult then?**

**A: Pain.**

**Q: You're in pain.**

**A: Oh, yes. Severe pain.**

**Q: What kind of pain are you in?**

**A: Muscular. Migraine to be exact.**

**Q: I understand. I know people that suffer from that. Are you in a position today where it's so difficult, the pain is so great you can't proceed?**

**A: That's everyday [sic], sir. But I still move on.**

**Q: Okay. My question is, today. Is the pain too great for you to proceed?**

**A: No. We can move on.**

**Q: And if it becomes a time during the proceedings where it is, would you let me know then?**

**A: I will.**

**THE COURT: And I would also note for the record, Mr. McMahon, so far Mr. Nisley has answered each and every one of my questions appropriately. So it appears to me we can proceed. But only he would know if the pain became so severe, because those things are subjective. If he let's [sic] me know we'll stop the proceedings.**

**[NISLEY'S COUNSEL]: For the record, Your Honor, my conversation with him earlier this morning went very smoothly. I had no doubt to his ability to proceed.**

**\* \* \***

**Q: Let's talk then if the Court allows the amendment [to the indictment] what the penalty could be. Under Ohio law for a misdemeanor of the first degree, do you understand that I could send you to the Hancock County Jail for up to 180 days?[3]**

**A: Yes.**

**Q: That I could fine you up to $1,000.**

**A: Yes.**

**Q: That I could order that you pay court costs.**

**A: Yes.**

**Q: Do you understand that the Court has the right to impose none of it, part of it, or all of those two sentences that I spoke of?**

**A: Yes.**

---

[3] This initial conversation between Nisley and the trial court was regarding the charge of Attempted Aggravated Possession of Drugs in violation of R.C. 2923.02(A) and R.C. 2925.11(A) in Nisley's other case. The State similarly amended possession charges in both that case and the case before us. This discussion regarding the penalty for the Attempted Aggravated Possession of Drugs charge is referred to later in the same hearing when the trial court discusses the penalty for that offense.

**Q: That I also have the authority, if I were to impose some of that time, to suspend it and place you on a term of probation or community control for up to 5 years.**

**A: Yes.**

\* \* \*

**Q: Now Mr. Nisley, if the Court were to permit the amendment to the first charge, first count in case 2013-CR-139 would then become a misdemeanor of a first degree and the penalties we just spoke of in the previous case imposed there. Do you understand that?**

**A: Yes.**

**Q: However, if count two remains a felony, do you understand that there's a distinction there. The two cases we talked about so far I mentioned jail only. So any incarceration would be of a local nature only.**

**A: Yes.**

**Q: \* \* \* [I]n count two, there is the possibility of a prison term. So let's review that. Do you understand the minimum sentence there is 6 months and the maximum is 12 months in prison?**

**A: I do.**

**Q: Do you understand that I could fine you up to $2,500 in that instance?**

**A: Yes.**

**Q: That I could also order that you pay court costs?**

**A: Yes.**

**[A discussion of post-release control and the possibility of community control was then had].**

**\* \* \***

**Q:  One final area that I want to discuss with you that relates to all three of these cases, that is -- two cases, three counts I should say.  If you offer pleas of guilty either to the original or to the amended forms of the offenses, do you understand that you are giving up your right to a trial?**

**A:  Yes.**

**Q:  As you sit here right now here in court I've not made a finding.  That means you still have the presumption of innocence.  So if you did wish to go to trial I want to make sure you understand that it's clear that the burden rests with the State of Ohio to prove your guilt in each of these cases.**

**A:  Yes.**

**Q:  And that's beyond a reasonable doubt.  You have no burden. They have the burden.**

**A:  Yes.**

**Q:  That [your trial counsel] would have the right to act as your advocate in concert with you at your trial and he would be authorized, for example, to make arguments, challenge evidence, cross examine all the State's witnesses, issue subpoenas, if necessary, to compel the attendance of witnesses for your defense.  Do you understand that?**

**A:  Yes.**

**Q:  You cannot be forced to testify against yourself, nor may your silence be used against you?**

**A:  Yes.**

**Q: And at trial it can take one of two forms. It could either be a jury trial or a court trial. If we were to proceed on the felonies then we would impanel twelve jurors. If for some reason we might proceed on felonies and mixed with misdemeanors and tried misdemeanors, the law says they can be tried to eight people.**

**However, the important note in Ohio to discuss is that whether it be a misdemeanor trial to eight or a felony trial to twelve, in Ohio all of the jurors have to agree that you're guilty before you could be convicted.**

**A: Yes.**

**Q: Now, you're giving up those rights, Mr. Nisley?**

**A: Yes.**

(Jul. 15, 2013 Tr. at 7-10, 12-20).

{¶9} Nisley then asked to speak with his trial counsel in private and the trial court went off the record. When the court came back on the record, Nisley indicated that he was ready to proceed and subsequently signed a written plea agreement in open court. (Doc. 16). Nisley also stated that he was "satisfied with [his] attorney's legal advice and counsel[.]" (Jul. 15, 2013 Tr. at 18). The trial court found that Nisley made a "knowing, voluntary, and intelligent decision to withdraw his plea of not guilty and to the amended charge tender a plea of guilty." (*Id.* at 23-24).

{¶10} Both parties asked for a presentence investigation report ("PSI"), and sentencing was scheduled for August 28, 2013. However, on August 28, Nisley became "violent" during the course of the sentencing hearing. (Sept. 4, 2013 Tr.

at 4). Throughout the hearing Nisley was "profane" and "disruptive" and the trial court declined to sentence him at that time. (*Id*.) Further, the trial court noted:

> **I am convinced that Mr. Nisley intentionally disrupt[ed] the proceedings as he does not wish to be sentenced in these matters. As I understand it, he was reasonably calm on his way over to the proceedings last week. Became disruptive while in court. I've been further advised on his way back he was literally laughing about what occurred, suggesting he was able to accomplish his goal of disrupting the proceeding and not proceeding to sentencing.**
>
> **So I don't believe it's an issue of competence or mental illness necessarily, although he has shown difficulties in the past. * * * But what I observed in my assessment is that it was not mental illness, but his intentional conduct which gave rise to the necessity of continuing those proceedings.**

(*Id*. at 5-6).

{¶11} On September 4, 2013, Nisley filed a number of *pro se* motions with the trial court. He filed a motion for "request of medical care and evalution [sic]" stating that he was in so much physical pain that it was causing "mental status" problems. (Doc. 23). Nisley also filed a "conflict of interest" motion, alleging that his trial counsel did not have his best interests in mind and that his attorney was refusing to hospitalize him for his pain. (Doc. 28). Nisley also asked the court to discharge his second court appointed attorney. (*Id*.) Nisley's other motions consisted of a "motion for contenuce [sic]," "change of venue," "request for charges," and a "conflict of interest" between himself and the trial court judge. (Docs. 24-27).

{¶12} A second sentencing hearing was also held on September 4, 2013. At the hearing, the trial court first addressed the motions Nisley filed. As to Nisley's request for medical care, the trial court made a copy of the motion and directed the Sheriff to address Nisley's concerns. Further, the Deputy Sheriff stated that Nisley was getting his medical concerns addressed by the jail's medical staff and that he has a physician and nurse[4] who regularly visit with Nisley.

{¶13} As to the motions for "conflict of interest" the trial court, Nisely, and Nisley's defense counsel had the following relevant discussion:

> **Defense Counsel: Your Honor, I just generally discussed this with [Nisley]. He never gave me a bases [sic] as to why he thought there was a conflict of interest. He keeps using the term conflict of interest when I don't really think that's the legal term he needs to use. I don't have any position on this. I would just defer to [Nisley].**
>
> **Trial Court: Mr. Nisley?**
>
> **Nisley: Well, really seems like my attorney Bozo over here, is brown nosing you. And the Prosecutor apparently is looking up to you. I feel like you have a conflict due to the fact that basically we've seen each other a little bit. This is what, the third time I'm standing before you? * * ***
> **I just really don't feel like my counsel is helping. I think you two are too good [of] friends for me to be getting a fair sentence and a fair plea bargain. [My defense counsel] did state that if I did not make a plea bargain with the 159 case, 13-CR-159 case, that I was going to get a lot of time. Like 18 months or something on two F5's and two M1's. I think that's a little hefty. And he stated that your position was that we have to make an**

---

[4] While in custody, Nisley allegedly spit on a nurse who was trying to give Nisley his medications. This incident resulted in more criminal charges being filed against Nisley.

**example because of the jail being involved. And I think you're just too close to this.**

**\* \* \***

**Trial Court: Well I don't believe I've ever told your counsel or the State of Ohio that I was going to demand a particular sentence. That's not my practice. \* \* \***
     **More importantly, and as [the State] points out, there is a specific, very specific statutory procedure that requires an affidavit of disqualification be filed with the Chief Justice of the Ohio Supreme Court.**

(Sept. 4, 2013 at 17-19). The trial judge then declined to recuse himself.

{¶14} Regarding the performance of his trial counsel, Nisley stated:

**Mainly there's [a] separate issue that go [sic] along with it, though. Mentioned in there is [trial counsel] is not doing his job for me. I didn't mind when I was making the plea bargain. I was satisfied at that timeframe. But if you remember, I did bring up the medication issue. You asked me if I was in so much pain that we should not continue. I felt so, but [trial counsel] told me to shut up and just go through it.**

(*Id.* at 20-21). The State then stated that Nisley's trial counsel has fought zealously, that it had not observed any unprofessional conduct, and that it did not believe removal would be appropriate. The trial court then denied Nisley's request to remove his second court appointed counsel and denied Nisley's remaining motions.

{¶15} The trial court then proceeded to sentencing. Ultimately the court found that, in this case, the Attempted Aggravated Possession of Drugs and Possession of Criminal Tools were allied offenses of similar import, and that they

should be merged for purposes of sentencing. (Doc. 30). The court directed the State to elect which offense it wanted to proceed with for the purposes of sentencing, and the State selected the fifth degree felony Possession of Criminal Tools charge. Nisley was then sentenced to serve ten months in prison and to pay court costs in the matter. (*Id.*) On September 6, 2013, the trial court filed a judgment entry, journalizing Nisley's conviction and sentence. (*Id.*)

{¶16} It is from this judgment that Nisley appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT ERRED IN DENYING DEFENDANT'S PRESENTENCE MOTIONS WHICH COLLECTIVELY CONSTITUED A WITHDRAWAL OF HIS GUILTY PLEA IN THAT HIS PLEA WAS NOT VOLUNTARY OR KNOWING IN THAT HE WAS IN SEVERE PAIN WHICH AFFECTED HIS JUDGMENT AND THE ABILITY TO UNDERSTAND WHAT HE WAS DOING.**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR A SECOND PSYCHOLOGICAL EVALUATION PRIOR TO THE SENTENCING HEARING.**

**ASSIGNMENT OF ERROR 3**
**THE COUNSEL FOR THE DEFENDANT PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL.**

*First Assignment of Error*

{¶17} In his first assignment of error, Nisley argues, in a convoluted manner, that collectively all his presentence motions constituted a motion to

withdraw his guilty plea and that he should have been allowed to withdraw his guilty plea due to the fact he was in so much pain at the time of the change of plea hearing, it rendered his plea involuntary. We disagree.

{¶18} Crim.R. 32.1 provides in pertinent part that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." While the general rule is that motions to withdraw guilty pleas, made before sentencing, are to be freely granted, the right to withdraw a guilty plea is not absolute. *State v. Xie*, 62 Ohio St.3d 521 (1992), paragraph one of the syllabus. The trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea. *Id*. The decision to grant or deny a motion to withdraw a guilty plea is within the sound discretion of the trial and will not be disturbed on appeal, absent an abuse of discretion. *Id*. at paragraph two of the syllabus. A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, ¶ 16-18 (2d Dist.).

{¶19} There are several factors that have been delineated by this and other courts to assist in our review of the trial court's determination to grant or deny a

motion to withdraw a guilty plea, including: (1) whether the State will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 hearing; (4) the extent of the hearing on the motion to withdraw; (5) whether the trial court gave full and fair consideration of the motion; (6) whether the timing of the motion was reasonable; (7) the reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge. *State v. Prince*, 3d Dist. Auglaize No. 2-12-07, 2012-Ohio-4111, ¶ 22; *State v. Lefler*. 3d Dist. Hardin No. 6-07-22, 2008-Ohio-3057, ¶ 11; *State v. Fish*, 104 Ohio App.3d 236, 240 (1st Dist.1995).

**{¶20}** Initially, we must note that we do not find that Nisley's presentence motions, viewed together, constituted a motion to withdraw his guilty plea. None of Nisley's presentence motions specifically asked the court to withdraw his guilty plea. In addition, Nisley had a court appointed attorney who never filed, or was asked to file, a motion to withdraw a guilty plea. Moreover, the State correctly points out that throughout the entire proceedings, Nisley cited the Ohio Revised Code, case law, the Rules of Criminal Procedure, and the United States Constitution. It is apparent from the record that despite Nisley's eccentric behaviors he had a better understanding of the legal system than most defendants. Thus, if Nisley wanted to withdraw his guilty plea, it seems very likely that he

would have filed a motion to withdraw, or at a bare minimum, specifically stated that he wanted to withdraw his guilty plea in one of the presentence motions he did file with the court. Nevertheless, even if we were to accept that all of Nisley's motions collectively constituted a motion to withdraw his guilty plea, we cannot find that the trial court abused its discretion in denying Nisley's motions.

{¶21} The record reveals that Nisley was afforded a full hearing, pursuant to Crim.R. 11, before he entered his guilty plea. In fact, on appeal Nisley does not argue that the trial court did not follow Crim.R. 11 when conducting his change of plea hearing. While Nisley did mention that he was in pain due to a severe migraine, the trial court repeatedly asked Nisley if he was okay to proceed with the hearing.

**Q: What kind of pain are you in?**

**A: Muscular. Migraine to be exact.**

**Q: I understand. I know people that suffer from that. *Are you in a position today where it's so difficult, the pain is so great you can't proceed*?**

**A: That's everyday [sic], sir. But I still move on.**

**Q: Okay. My question is, today. *Is the pain too great for you to proceed?***

**A: *No. We can move on.***

**Q: And if it becomes a time during the proceedings where it is, would you let me know then?**

**A: I will.**

**Q: And I would also note for the record, [defense counsel], so far Mr. Nisley has answered each and every one of my questions appropriately. So it appears to me we can proceed. But *only he would know if the pain became so severe*, because those things are subjective. *If he let's* [sic] *me know we'll stop the proceedings.***

(Emphasis added.) (Jul. 15, 2013 Tr. at 9-10). Nisley never mentioned the pain again and never asked the court to stop the proceedings due to his pain.

**{¶22}** Nisley was also afforded a full, impartial hearing on his presentence motions. Further, he was represented by a highly competent counsel. The record indicates that the State's original plea offer was not acceptable to Nisley, as Nisley was concerned with having convictions for "felony drug possessions" and how they would impact his ability to receive welfare benefits. (Sept. 4, 2013 Tr. at 22). Trial counsel then negotiated the reduction of the possession charge to a misdemeanor offense. (*Id*. at 23).

**{¶23}** Nisley argues that the trial court abused its discretion by denying his motions because the State would not have been prejudiced if he would have been able to withdraw his guilty plea. However, Nisley's change of plea hearing occurred on July 15, 2013, and his presentence motions were not filed until September 4, 2013. Thus, Nisley waited over a month and a half before filing his motions. Further, Nisley also disrupted his first sentencing hearing and the trial

-17-

court had to continue the hearing to a later date. Looking at the entire record, it appears that Nisley was purposefully trying to delay resolution of his case.

**{¶24}** Nisley also contends that the trial court erred because he was "challenging his [guilty] plea because he was not guilty." (Appellant's Br., at 14). On appeal Nisley asserts that the Yoo-Hoo container could conceal legal things, and thus could have been found not to be a criminal tool. Although Nisley asserts his innocence on appeal, at the time of the change of plea hearing, the trial court asked if Nisley understood that he would be admitting to the offense of attempted possession of drugs, and Nisley said he understood. Further, it appears from the PSI Nisley admitted at the time of the traffic stop that the Yoo-Hoo container contained Percocet pills and a powder Nisley identified as "crystal."

**{¶25}** Since Nisley was afforded a full hearing pursuant to Crim.R. 11, was given a hearing on his presentence motions, and was represented by competent counsel, we cannot say the trial court abused its discretion when denying Nisley's presentence motions. *See State v. Sylvester*, 2d Dist. Montgomery No. 22289, 2008-Ohio-2901, ¶ 19 (finding that the trial court did not abuse its discretion in denying defendant's motion to withdraw a guilty plea when: (1) accused was represented by competent counsel; (2) accused was afforded a full hearing pursuant to Crim.R. 11 before pleading guilty; (3) accused was given a complete

and impartial hearing on his motion to withdraw a guilty plea; and (4) the trial court gave its full and fair consideration to the plea withdrawal request).

{¶26} Accordingly, Nisley's first assignment of error is overruled.

*Second Assignment of Error*

{¶27} In his second assignment of error, Nisley argues that the trial court erred in denying his request for a psychological evaluation prior to sentencing. We disagree.

{¶28} Pursuant to R.C. 2945.37(B):

**In a criminal action in a court of common pleas * * * the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion.**

Further, a defendant is presumed to be competent and it is the defendant's burden to prove, by a preponderance of the evidence, that because of his present mental state, he is incompetent to stand trial. R.C. 2945.37(G). If the issue of the defendant's competence is raised, "the court *may* order one or more evaluations of the defendant's present mental condition * * *." (Emphasis added.) R.C. 2945.37(A). Thus, the wording of the statute indicates that it is within the discretion of the trial court to order a competency evaluation. *State v. Bailey*, 90 Ohio App.3d 58, 67 (11th Dist.1992).

{¶29} We find no abuse of discretion in the trial court's refusal to order a competency evaluation. In the record before us, it is clear that Nisley had recently undergone a competency evaluation in the case that was heard simultaneously with this one at the plea hearing and for sentencing purposes. Although Nisley argues that he was in so much pain that it affected his mental status, we cannot find any evidence in the record to support this conclusion. Nisley and the trial court had intelligent conversations and Nisley never acted as though he did not understand the nature of the proceedings or the charges against him while in front of the trial court. Furthermore, the trial court stated at the sentencing hearing that it believed Nisley was intentionally disrupting the proceedings.

{¶30} It was Nisley's burden to establish that he was incompetent by a preponderance of the evidence. We cannot find that he met this burden, and therefore, the trial court did not abuse its discretion by denying Nisley's request for a competency evaluation.

{¶31} Accordingly, we overrule Nisley's second assignment of error.

*Third Assignment of Error*

{¶32} In his third assignment of error, Nisley argues that he was denied effective assistance of counsel. We disagree.

{¶33} "A guilty plea waives all appealable orders except for a challenge as to whether the defendant made a knowing, intelligent, and voluntary acceptance of

the plea." *State v. Ramsey*, 3d Dist. Marion No. 9-10-55, 2012-Ohio-134, ¶ 15, citing *State v. Spates*, 64 Ohio St.3d 269, 272 (1992). Thus, in order to prove that Nisley received ineffective assistance of counsel, he must show that: (1) his trial counsel's performance was deficient; and (2) that but for his trial counsel's deficiencies, there is a reasonable probability that he would not have pleaded guilty. *Xie*, 62 Ohio St.3d at 524.

{¶34} At Nisley's change of plea hearing, the trial court specifically asked him whether he was "satisfied with [his] attorney's legal advice and counsel" and Nisley replied that he was. (Jul. 15, 2013 Tr. at 18). Nisley also answered affirmatively that his trial counsel had gone over and explained the plea agreement with him. (*Id*. at 7). Nisley repeated these statements to the trial court at his sentencing hearing wherein he stated that he was "satisfied" with his trial counsel at the time of his change of plea hearing. (Sept. 4, 2013 Tr. at 21). Further, we note that Nisley entered a plea as part of a negotiated plea agreement, wherein the State agreed to reduce one of the felony charges against Nisley to a misdemeanor.

{¶35} Nisley alleges that his trial counsel "told him that he must take the plea offer, else he would get larger sentences in other pending cases." (Appellant's Br. at 17). Nisley also contends that his trial counsel told him to "shut up and just go through it" after he complained to his counsel about the pain

he was in. (Sept. 4, 2013 Tr., p. 21). Besides Nisley's self-serving statements, there is no evidence that Nisley's trial counsel actually said these things to Nisley.

**{¶36}** Therefore, we find Nisley's allegation that his trial counsel somehow forced him to enter a guilty plea is unsupported by the record in this case. Accordingly, we overrule Nisley's third assignment of error.

**{¶37}** For the foregoing reasons Nisley's assignments of error are overruled and the judgment of the Hancock County Common Pleas Court is affirmed.

*Judgment Affirmed*

**ROGERS and PRESTON, J.J., concur.**

**/jlr**