[Cite as *State v. Huggins*, 2014-Ohio-4999.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,           CASSE NO.  13-14-10

      v.

ANTWAN L. HUGGINS,           O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 13-CR-0115

**Judgment Affirmed**

Date of Decision:  November 10, 2014

**APPEARANCES:**

    *Scott B. Johnson* **for Appellant**

    *Derek W. DeVine and Angela M. Boes* **for Appellee**

**ROGERS, J.**

{¶1} Defendant-Appellant, Antwan Huggins, appeals the judgment of the Court of Common Pleas of Seneca County, convicting him of one count of possession of drugs with a specification and one count of illegal conveyance of drugs of abuse onto the grounds of a governmental facility and sentencing him to eight years in prison. On appeal, Huggins argues that the trial court erred by denying his motion to suppress evidence and denying his presentence motion to withdraw his no contest plea. For the reasons that follow, we affirm the trial court's judgment.

{¶2} On August 14, 2013, the Seneca County Grand Jury returned a two count indictment against Huggins, charging him with one count of possession of drugs with a specification in violation of R.C. 2925.11(A)(C)(4)(e), a felony of the first degree, and one count of illegal conveyance of drugs of abuse onto the grounds of a specified governmental facility in violation of R.C. 2921.36(A)(2) and (G)(2), a felony of the third degree. Huggins filed a motion to suppress evidence on September 23, 2013, alleging that the police had obtained evidence in violation of his Fourth Amendment right against unreasonable search and seizure. Huggins argued that the officers went outside the scope of a strip search authorized by a warrant and instead conducted an illegal body cavity search in violation of R.C. 2933.32.

**{¶3}** A suppression hearing was held on November 8, 2013. Detective Gabriel Wedge of the Fostoria Police Department testified that he was the affiant that had acquired an anticipatory warrant to search Huggins' person, which he believed authorized a strip search. Detective Wedge explained how he had acquired the warrant, explained what he was searching for, identified a copy of the warrant, and testified that it had been signed by a judge. Huggins was provided a copy before the search and had its contents explained to him. Detective Wedge further testified that Huggins was transported to the Fostoria Police Department to conduct the strip search. While Detective Wedge was not present for the search itself, the search had been recorded. He identified a DVD that contained a copy of the video recording, and stated that he had made the copy, which was later played for the court. He also identified an inventory page that detailed what was found as a result of the search, and that one of the items was a small baggie containing a white rock-like substance which was later identified as cocaine.

**{¶4}** On cross-examination, Detective Wedge acknowledged that the warrant did not authorize a body cavity search. When asked about the contents of the video, he admitted that nothing fell from between Huggins' buttocks when he was initially stripped. However, he also stated that Huggins had "kept his butt cheeks clinched while he was being searched." Suppression Hearing Tr., p. 30. Further, Huggins had been given several commands to spread his legs and perform a "duck walk," which is a method of walking that would allow something hidden

between a person's buttocks to fall, but Huggins refused those requests. Detective Wedge further testified that, from his viewing of the video, Huggins' legs never came apart until officers forced them apart.

{¶5} The State then called Officer Cory Bryan of the Fostoria Police Department to testify. Officer Bryan testified that he had assisted with the search of Huggins' person. After transporting Huggins to the police department, he asked Huggins whether he had any contraband and explained that if the officers found contraband on his person, it could result in additional charges. Huggins then asked for his lawyer, and was informed that the strip search was being conducted pursuant to a warrant.

{¶6} Officer Bryan had the dispatcher turn off the TV monitors to provide Huggins with privacy, but informed him that the search would be recorded by video. Initially, Huggins was not compliant, but eventually agreed to follow the officer's commands. Huggins' handcuffs were removed and he disrobed. Another officer then asked Huggins to turn around and spread his buttocks, but Huggins refused. After repeated warnings that he would be restrained if he did not comply, and his continued refusals, the officers took Huggins to the floor. Huggins screamed and yelled and continued to fight the attempts to have him spread his legs. Two other officers arrived to assist in spreading Huggins' legs. Once his legs were spread, the baggie was immediately visible and was retrieved. When asked where the baggie was specifically located, Officer Bryan testified:

A:    It was located between his butt cheeks near the inner-gluteal muscles.

Q:    Was it, from your observation inside his cavity at all or just between the butt cheeks?

A:    Just between the butt cheeks.

Q:    So it easily was removed or fell out at that point?

A:    Yes.

*Id.* at p. 45.  He further stated that no officer inserted anything into Huggins' anus or any other cavity while performing the search.

{¶7} On cross-examination, Officer Bryan admitted that nothing fell from between Huggins' buttocks, and that nothing was visible until Huggins' legs were spread.  He testified that Huggins did not fully spread his legs until they were forced apart by the officers, and had Huggins complied with the request to spread his legs or otherwise perform a "duck walk," the baggie would have become visible.

{¶8} In a November 13, 2013 journal entry, the trial court overruled Huggins' suppression motion.  The court found that

> there was no body cavity search conducted.  The search conducted was a strip search as there was no inspection of the Defendant's anal cavity.  There was an inspection of the Defendant's buttocks as he had been clinching his buttocks together in an attempt to conceal or hide the item that officers eventually recovered.  The body cavity itself was not exposed and there was no insertion into Defendant's anus.  The search was conducted at the Fostoria Police Department's City Jail where Defendant was transported in order to be searched pursuant to the search warrant served upon him.

(Docket No. 38, p. 3). The court went on to find that the warrant authorized a strip search of Huggins, the scope of the search was permissible under the warrant, and as a result there was no violation of Huggins' Fourth Amendment rights.

{¶9} On November 26, 2013, Huggins indicated that he wished to change his plea to no contest as a result of a plea agreement. Huggins stated that he understood the details of the plea agreement, could think clearly, and was satisfied with his attorney. The trial court then explained the charges and the possible penalties associated with a finding of guilt, and informed him of all of the rights that he was waiving. Specifically, the court informed Huggins that he was waiving his right to a jury trial, the right to confront witnesses against him, the right to subpoena witnesses to appear on his behalf, the privilege against self-incrimination, and the right to have the State prove all elements of his offenses beyond a reasonable doubt. Huggins stated that he was entering the plea voluntarily and had not been coerced or threatened, understood the rights he was waiving, and that a plea of no contest meant that he was not disputing the facts as presented by the State. After this dialogue, Huggins stated that he still wished to enter the plea of no contest and executed the agreement in open court, which was accepted by the trial court. The court then found Huggins guilty after its independent examination of the facts, and entered a journal entry to that effect.

{¶10} On December 12, 2013, Huggins filed two pro se motions. The first asked the court to reconsider its ruling on the prior motion to suppress. Huggins argued that his counsel was ineffective for failing to call him as a witness or obtain his medical records which would have showed that a body cavity search was performed to obtain the baggie. He also argued that his counsel should have attacked whether the warrant was based upon probable cause.

{¶11} In support of his motion to withdraw his no contest plea, Huggins stated:

> Whereas the defendant has not been sentenced in this instant case and by the up above cited law is permitted to withdraw his guilty plea before sentencing. As the defendant has became [sic] aware of laws to proceed in this matter will lead to his innocence, so it would be a grave manifest of injustice to deny the defendant from withdrawing his guilty plea.

(Docket No. 45, p. 2). He also requested new counsel to represent him, which the trial court granted on January 28, 2014.

{¶12} The trial court conducted a hearing on Huggins' motion to withdraw his no contest plea on March 17, 2014. Huggins took the stand to testify. He stated that he had a disagreement with his prior counsel over whether he should testify at his original suppression hearing. His counsel advised him not to take the stand, but did not explain why. The sole basis for his withdrawal was that he was denied the ability to take the stand, and that had he taken the stand, he would have had a defense to the charge.

{¶13} On cross-examination, he was asked what defenses he would have presented had he testified at his suppression hearing, and he responded "[t]hat the Fostoria police stuck their hands in my rectum."  Plea Withdrawal Hearing Tr., p. 16.  He stated that he understood the ramifications of his no contest plea, and then stated that he had gone to a hospital for treatment after the search, but that his prior counsel did not call the doctor or nurses to testify.  However, he admitted that there was no new evidence of his innocence, only that he wanted to testify at the suppression hearing, and that he did not procure the supportive medical evidence himself or file a complaint regarding the conduct of the officers. Huggins had no additional witnesses to present.

{¶14} The State called Detective Wedge who testified in a similar fashion to his prior testimony at the suppression hearing.  The warrant and DVD recording of the search were admitted into evidence.

{¶15} Huggins took the stand in rebuttal and testified that the reason that he had been tense during the search was because of a metal rod in his arm that caused him pain when his arm was being held by police.  He also stated that the officers never asked him to perform a "duck walk."  Further, he stated: "[W]hen I was naked on the wall, I mean, I was stripped down naked and I was on the wall.  They – Nobody told me to do any duck walks.  They told me – The officer kicked my legs apart and I turned around and I asked him, like, why did you kick my leg? And that's when I was threw [sic] to the ground."  *Id.* at p. 48.  He also denied

being given numerous chances to follow with the officers' requests, and instead, asserted that the officers took him to the ground before he could comply.

{¶16} In its March 21, 2014 entry, the trial court detailed several factors that it considered when making its ruling, finding that (1) the prosecution would be prejudiced by the withdrawal; (2) the defendant had been zealously represented by an attorney of his choosing during the pendency of the proceedings and never voiced any complaint regarding his counsel; (3) Huggins had stated that he was acting voluntarily multiple times when changing his plea; (4) the motion to withdraw was filed two weeks after the change of plea hearing; and (5) Huggins did not present any possible defense in the face of overwhelming evidence of guilt. In conclusion, the trial court found these factors weighed against allowing Huggins to withdraw his plea, and overruled the motion.

{¶17} On April 14, 2014, Huggins was sentenced to eight years in prison for the possession with a specification charge and 24 months in prison for the illegal conveyance charge, each to be served concurrently with the other but consecutive to an already imposed sentence in a different case. This sentence was memorialized in the trial court's April 15, 2014 judgment entry.

{¶18} Huggins timely appealed this judgment, presenting the following errors for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE SEIZED IN A WARRANTLESS SEARCH OF HIS BODY CAVITY.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO WITHDRAW HIS NO CONTEST PLEA PRIOR TO SENTENCING.**

*Assignment of Error No. I*

{¶19} In his first assignment of error, Huggins argues that his motion to suppress should have been granted, as the evidence was obtained through a warrantless body cavity search in violation of R.C. 2933.32. We disagree.

*Standard of Review*

{¶20} "Appellate review of a decision on a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Johnson*, 137 Ohio App.3d 847, 850 (12th Dist.2000). Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of fact so long as they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71,

2006-Ohio-3665, ¶ 100.  The appellate court must then review the application of the law to the facts de novo.  *Burnside* at ¶ 8.

{¶21} Here, the motion to suppress was predicated on a violation of Huggins' Fourth Amendment right against unreasonable search and seizure under the United States Constitution.  On appeal, Huggins does not dispute the validity of the search warrant or that it allowed the officers to conduct a strip search of his person.  Instead, Huggins argues that the officers went outside the scope of the warrant and performed a body cavity search in violation of R.C. 2933.32.  The State does not dispute that the statute applies, but argues that the conduct of the officers did not go beyond an authorized strip search.[1]

{¶22} The trial court found that "there was an inspection of the Defendant's buttocks as he had been clinching his buttocks together in an attempt to conceal or hide the item that officers eventually recovered. The body cavity itself was not exposed and there was no insertion into Defendant's anus."  (Docket No. 38, p. 3). These findings are supported in the record.  Officer Bryan testified that the baggie was located between the cheeks of Huggins' buttocks and that nothing was inserted into his anus.  Further, the video recording supports the testimony of the officers who stated that Huggins was asked to spread his legs, was non-compliant, and was clinching his buttocks together until his legs were forcibly spread by two

---

[1] We note that at least three other appellate courts have found that searches conducted in violation of R.C. 2933.32 will not result in a suppression of evidence, as it falls short of a constitutional violation and the statute does not contain a legislative mandate requiring exclusion.  *See State v. Purley*, 6th Dist. Lucas No. L-11-1116, 2012-Ohio-3734, ¶ 27; *State v. Freeman*, 5th Dist. Stark No. 1999CA00131, 2000 WL 222036, * 2 (Feb. 7, 2000); *State v. Yett*, 1st Dist. Hamilton No. C-980435, 1999 WL 132707, *3 (Mar. 12, 1999).

other officers. While the baggie was not visible until retrieved after Huggins' legs were spread, there is no evidence on the video of anything entering Huggins' anus.

{¶23} We note that the officer who actually removed the baggie from Huggins' buttocks did not testify, and no explanation was given for his absence. While the best practice would be to call the officer who actually removed the evidence to testify, under the circumstances the video recording adequately supports the testimony that nothing penetrated Huggins' anus. Therefore, the trial court's findings of fact are supported by competent, credible evidence in the record.

{¶24} As to the correct application of the law, R.C. 2933.32(A)(1) defines a body cavity search as "an inspection of the anal or vaginal cavity of a person that is conducted visually, manually, by means of any instrument, apparatus, or object, or in any other manner while the person is detained or arrested for the alleged commission of a misdemeanor or traffic offense."

{¶25} A strip search is defined as

an inspection of the genitalia, buttocks, breasts, or undergarments of a person that is preceded by the removal or rearrangement of some or all of the person's clothing that directly covers the person's genitalia, buttocks, breasts, or undergarments and that is conducted visually, manually, by means of any instrument, apparatus, or object, or in any other manner while the person is detained or arrested for the alleged commission of a misdemeanor or traffic offense.

R.C. 2933.32(A)(2). The statute allowed the officers to conduct a manual inspection of Huggins' buttocks while performing a strip search, which would

include spreading Huggins' legs to see between the cheeks of the buttocks. *See State v. Purley*, 6th Dist. Lucas No. L-11-1116, 2012-Ohio-3734, ¶ 27.

{¶26} While Huggins does not argue that the officers actually penetrated his anus to retrieve the baggie, he argues that their actions were still outside the scope of a strip search authorized by the warrant. "The kernel of the entire issue in this case comes down ultimately to where the Buttocks ends and where the anal cavity begins." Appellant's Br., p. 10. Huggins argues, and we do not dispute, that anal cavity is not defined in statute. As a result, as stated in his brief:

> It can be agreed that between the two buttocks near the bottom there is a crease that transitions into the anus. At some point the buttocks becomes the anus. The space between the two buttocks forms a cavity. If one spreads the cheeks, the anus spreads open with them, at some point. Just as in this court's observations in [*State v. Farr*, 3d Dist. Seneca No. 13-06-16, 2007-Ohio-3136, ¶ 17], penetration needs only to be slight, so does the "slight" penetration test apply in the present situation.

*Id.* at p. 12. As we understand the argument, Huggins is asking this court to find, as a matter of law, that the spreading of the cheeks also spreads the anus, which amounts to penetration, and thus a body cavity search.

{¶27} In support of this proposition, Huggins argues that our decision in *Farr* requires a broad interpretation of body cavities that include areas outside the body. In *Farr*, as part of its case in chief, the State was required to prove sexual conduct under R.C. 2907.01(A), which at the time was defined as any slight

-13-

insertion into the vaginal cavity.[2]  *Farr* at ¶ 15.  The defendant argued that the court's jury instruction defined vaginal cavity too broadly as it included "the exterior portions of the vagina."  *Id.* at ¶ 12.  However, while the trial court instructed the jury that the vaginal cavity included the vulva, penetration only occurred "if the finger/fingers is introduced with sufficient force to cause the labia majora to spread * * *."  *Id.* at ¶ 16.  In analyzing what constituted sexual conduct under the statute, this court found that

> " '[p]enetration of the vaginal cavity requires introduction of an object from without, which necessarily implies some forceful spreading of the labia majora. * * *  Therefore, if the object is introduced with sufficient force to cause the labia majora to spread, penetration has occurred.' "

*Id.* at ¶ 17, quoting *State v. Brewer*, 2d Dist. Greene No. 03CA0074, 2004-Ohio-3572, ¶ 31-32, quoting *State v. Grant*, 2d Dist. Montgomery No. 19824, 2003-Ohio-7240, ¶ 30.  As the trial court's instruction mirrored this finding, it was not overly broad.  *Farr* at ¶ 17.

{¶28} Here, Huggins argues that his anus was spread when the cheeks of his buttocks were spread, and thus the officers penetrated his anal cavity.  However, unlike *Farr*, the spreading was not caused by the forceful introduction of an object from without.  Instead, as Huggins admits, any spreading of the anus

---

[2] R.C. 2907.01(A) currently defines sexual conduct as "the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal *opening* of another."  (Emphasis added.)

was merely the result of the spreading of the cheeks. As a result, under the standard articulated in *Farr*, penetration did not occur.

{¶29} Huggins also relies on the Ohio Supreme Court's decision in *State v. Wells*, 91 Ohio St.3d 32 (2001), which also analyzes the definition of sexual conduct under the same version of R.C. 2907.01(A) discussed in *Farr*, to stand for the proposition that spreading the cheeks of the buttocks constitutes penetration. However, the *Wells* court found that "penetration into the anal cavity occurs when some part of the body or some other item is *inserted into the anus*." (Emphasis added.) *Id.* at 34. Indeed, as the Court stated, "it is evident that the General Assembly did not intend for *contact* with the buttocks alone to be sufficient * * *." (Emphasis added.) *Id.*

{¶30} The Second District, in interpreting *Wells*, found that

[p]enetration of the anal cavity requires entry through the anus. The "however slight" standard in R.C. 2907[.01](A) permits a finding that anal intercourse has occurred when there is evidence of some forceful spreading of the anus by the object concerned. A spreading of only the buttocks, *which forms no part of the anal cavity*, is therefore insufficient * * *.

(Emphasis added.) *Grant,* 2003-Ohio-7240 at ¶ 28; *see also State v. Stevens*, 9th Dist. Summit No. 22157, 2004-Ohio-6263, ¶ 9 (finding that sexual conduct under *Wells* "does not include the touching of the buttocks unaccompanied by any penetration").

**{¶31}** Here, contact with the buttocks occurred, but penetration of the anus did not. Without penetration, the police did not enter into Huggins' anal cavity under *Wells*. Therefore, we find that the police performed a strip search in accordance with the statute and did not exceed the scope of the valid warrant they had obtained.

**{¶32}** Accordingly, Huggins' first assignment of error is overruled.

*Assignment of Error No. II*

**{¶33}** In his second assignment of error, Huggins argues that the trial court erred by denying his presentence motion to withdraw his no contest plea. We disagree.

**{¶34}** Crim.R. 32.1 provides in pertinent part that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." While generally motions to withdraw guilty or no contest pleas made before sentencing are to be freely granted, the right to withdraw a plea is not absolute. *State v. Xie*, 62 Ohio St.3d 521, 527 (1992). "[T]he trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.* A trial court's denial of a motion to withdraw a plea is reviewed for an abuse of discretion. *Id.* A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or

grossly unsound. *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, ¶ 16-18 (2d Dist.).

**{¶35}** Nine factors are typically considered when determining whether the trial court abused its discretion in denying the withdrawal of a plea:

> 1)   whether the State will be prejudiced by the withdrawal; 2) the representation afforded to the defendant by counsel; 3) the extent of the Crim.R. 11 plea hearing; 4) the extent of the hearing on the motion to withdraw; 5) whether the trial court gave full and fair consideration to the motion; 6) whether the timing of the motion was reasonable; 7) the reasons for the motion; 8) whether the defendant understood the nature of the charges and potential sentences; and 9) whether the accused was perhaps not guilty or had a complete defense to the charge.  * * *  A change of heart is not sufficient grounds to allow the withdrawal of a guilty plea, even in a presentence motion to withdraw the plea.

*State v. Prince*, 3d Dist. Auglaize No. 2-12-07, 2012-Ohio-4111, ¶ 22.

**{¶36}** At the outset, we note that the sixth factor, which concerns whether the timing of the motion was reasonable, weighs in Huggins' favor.  Huggins filed his motion to withdraw his no contest plea two weeks after the change of plea hearing.  Further, no evidence was presented that Huggins waited till the eve of his sentencing hearing to file the motion or was using the filing to otherwise delay the proceedings.  *Compare State v. Keehan*, 3d Dist. Henry No. 7-14-05, 2014-Ohio-3872, ¶ 15 (finding that the filing of a motion to withdraw plea one week prior to scheduled sentencing hearing was reasonable) *with State v. Gallagher*, 7th Dist. Mahoning No. 08 MA 178, 2009-Ohio-2636, ¶ 37 (finding that appellant's timing

was unreasonable when motion to withdraw was made the same day as sentencing).

{¶37} However, the remaining factors all weigh in favor of the trial court's decision to deny Huggins' presentence motion to withdraw his no contest plea. Indeed, Huggins does not contest the he had an extensive Crim.R. 11 plea hearing, an extensive hearing on his motion to withdraw, that the trial court gave full and fair consideration to his motion, or that he understood the nature of the charges, and concedes that these factors weigh against granting the motion. Instead, he only argues that the State will not be prejudiced by granting the motion; his representation was deficient; he had adequate reasons for the motion in that he was medicated and not in his right mind at the hearing and his attorney misled him; and he had a complete defense to the charges, and that these factors, taken together, required the trial court to grant the motion.

{¶38} Here, the trial court found that the State would be prejudiced as the change of plea occurred after the court overruled a motion to suppress evidence, which had been continued multiple times at the request of Huggins, and the plea hearing had been "conducted on November 26, 2013, less than a week before the scheduled trial date of December 2, 2012." (Docket No. 63, p. 4). The trial court found that Huggins was attempting to relitigate the suppression issue, reiterating that after reviewing the video the search was within the ambit of the warrant. Moreover, the State argued at the hearing that "it would be prejudicial and

unreasonable and unfair to allow the defendant to now withdraw his plea and require the State of Ohio to secure its witnesses again and go through all of those motions." Plea Withdrawal Hearing Tr., p. 53. Therefore, we find some evidence on the record that the State would be prejudiced.

{¶39} The trial court found, and we agree, that Huggins was zealously represented by a counsel of his own choosing throughout the pendency of the proceedings and never voiced any complaint about his representation until after he had entered his no contest plea. Indeed, Huggins specifically stated at the Crim.R. 11 hearing that he was satisfied with his counsel.

{¶40} As to Huggins' reasons for the withdrawal, we note that the allegation that he was medicated and not in his right mind at the suppression hearing was not a part of the motion to withdraw the plea, not mentioned at the hearing, and Huggins actually testified to the contrary when he changed his plea. Moreover, Huggins offered no evidence that would have corroborated his assertions that he was medicated and not in his right mind.

{¶41} As stated by Huggins, "the crux of the present case rests in the ninth factor * * *." Appellant's Br., p 16. While the trial court found that Huggins did not produce a possible defense or reason why he may not be guilty, Huggins asserts that he had informed his prior attorney that he had wanted to testify at the suppression hearing, but was never called. This combines both how his attorney misled him as well as a defense to the charge.

{¶42} At the hearing to withdraw his no contest plea, Huggins testified that had he been called as a witness at the suppression hearing, he would have presented evidence that the police performed an illegal body cavity search. With an illegal search, the evidence would have been suppressed and Huggins would have a complete defense. He admitted that this was "[p]retty much [his] sole basis" for his motion to withdraw his no contest plea. Plea Withdrawal Hearing Tr., p. 11. Therefore, to weigh in favor of granting the motion under the circumstances, Huggins was required to present some evidence that would have called into question the trial court's prior decision on suppression.

{¶43} On direct examination Huggins stated that he would have had a defense had he been able to testify at the suppression hearing. On cross-examination, the following exchange took place:

> Q: Okay. You had just testified that your testimony at [the suppression] hearing would have provided a defense to the charge but you're not telling us what that defense would be. What kind of defense were you going to offer?
>
> * * *
>
> Q: What was your defense going to be?
>
> A: That the Fostoria police stuck their hands in my rectum.

Plea Withdrawal Hearing Tr., p 15-16. Huggins went on to state:

> Can I say something else, too, also, uhm, I told, I also told [my attorney] that, uhm, I went to Fostoria Hospital to get checked out after – after all this happened. And I told him to call the doctor for

(Inaudible) and he didn't call it, like, he didn't do, he didn't call the doctor or nurses that treated me when I went to the hospital.

*Id.* at p. 20. However, Huggins failed to call any doctor or nurse to substantiate this claim, nor were any medical records entered into evidence. He admitted that he lodged no formal complaint against the Fostoria Police Department, did not talk to the Sherriff about the incident, and did not contact the prosecutor.

{¶44} Even if this information had been available to the trial court at the original suppression hearing, it would not have abused its discretion in finding that there was no body cavity search. The video recording and the testimony of the officers directly contradict Huggins' assertion that any member of the Fostoria police placed their hand in his rectum. Further, the claim that he received treatment at any hospital is suspect given that this was the second hearing on the issue and no medical records were    produced to corroborate the claim.

{¶45} Additionally, nearly all of Huggins' statements at the change of plea hearing were directly contradicted by the video. For example, Huggins claimed that he was not offered an opportunity to comply with requests to spread his legs. However, on the video recording, he was repeatedly asked to spread the cheeks of his buttocks and verbally refused. He was then asked to spread his legs and refused. Further, Huggins claimed that the officers never asked him to perform a "duck walk" to dislodge anything from between the cheeks of his buttocks. In the video, the officer gave him the option of performing the "duck walk" and then

briefly demonstrated it to Huggins before the search occurred. Moreover, Huggins stated that he tensed up because the officers had grabbed his arm where he had a metal rod. However, it is clear from the video that he was clinching his buttocks before his arms were grabbed. Therefore, in light of the video, Huggins' testimony is not credible, and the trial court was correct to determine that Huggins had no meritorious defense to the charges against him.

**{¶46}** For the above stated reasons, in light of the fact that the majority of the factors weigh against granting the motion, we find that the trial court did not abuse its discretion in denying Huggins' presentence motion to withdraw his no contest plea.

**{¶47}** Accordingly, Huggins' second assignment of error is overruled.

**{¶48}** Having found no error prejudicial to Huggins in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**